UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DOMINIC OVELLA                                                                                    PLAINTIFF

VERSUS                                                       CIVIL ACTION NO. 1:10CV285-LG-RHW

B&C CONSTRUCTION AND EQUIPMENT, LLC et al                              DEFENDANTS

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Before the Court are two [186, 194] motions filed by Plaintiff Dominick Ovella and Third-Party Defendant/Counter Plaintiff Kathleen Ovella seeking to exclude the expert reports of Kifayat Khan and Michael LeBatard.  Defendants produced the reports at issue on April 1, 2011. The Ovellas argue that the reports should be stricken because they are untimely and because they contain inadmissible and/or unreliable expert opinions.

In his complaint, Plaintiff alleges that his home in Pass Christian, Mississippi, was constructed in a defective manner.  He alleges that the defects are the result of Defendants' negligence, and that the defects constitute breaches of the construction contract and Mississippi's New Home Warranty.  Defendants filed a counterclaim alleging that the Ovellas breached the construction contract, have been unjustly enriched, breached the duty of good faith and fair dealing, and committed a tortious breach of contract.  Kathleen Ovella's counterclaims are substantially similar to the claims brought be her husband Dominic Ovella.

The Ovellas designated a structural engineer, George Hammit, to give opinion testimony regarding the construction of the house.  Defendants have countered by designating a structural engineer, Kifayat Khan, and an architect, Michael LeBatard.  Defendants' expert designation deadline was January 7, 2011, with a discovery deadline of April 1, 2011.  The Court later

granted Defendants an extension until January 14, 2011, to serve their expert reports. Defendants produced initial expert reports from Khan and LeBatard on January 14, 2011. These reports were supplemented on January 21, 2011. Pursuant to an email exchange in February 2011, the attorneys agreed not to oppose amendments or supplements to one another's expert reports. Defendants then served a third set of expert reports on the last day of discovery, April 1, 2011, to which the Ovellas object. They argue that it should be stricken as untimely. By separate motion, Defendants argue that the reports should be excluded pursuant to *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993).

**Timeliness**

Rule 26 provides that expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them". Fed. R. Civ. P. 26(a)(2)(b)(i). The expert opinion must also contain "the data or other information considered by the witness in forming" the expert's opinions. Fed. R. Civ. P. 26(a)(2)(b)(ii). The rules allow parties to supplement disclosures in "a timely manner if the party learns that in some material respect the disclosure or response is incomplete . .. . and if the additional information has not otherwise been made known to the other parties during the discovery process or in writing," or as ordered by the court. Fed. R. Civ. P. 26(e)(1). For expert disclosures, any supplemental information must be disclosed by the time the party's pretrial disclosures under Rul 26(a)(3) are due. Fed. R. Civ. P. 26(e)(2). These are due, "unless the court orders otherwise, . . . at least 30 days before trial." Fed. R. Civ. P. 26(a)(3). The trial in this matter is currently scheduled for the three-week trial calendar beginning September 12, 2011.

At issue is whether the third expert reports of Khan and LeBatard are mere supplements

to prior expert opinions or whether they constitute new and therefore untimely expert opinions. If the reports contain new opinions, then the Court must further consider whether the reports should be excluded as a sanction for untimeliness. *See Reliance Ins. Co. v. Louisiana Land and Exploration, Co.*, 110 F.3d 253, 257-58 (5th Cir. 1997); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569-71 (5th Cir. 1996).

The trial court is afforded broad discretion to preserve the integrity and purpose of the pretrial order. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). Rule 16(b) allows a scheduling modification only for good cause. The court is directed to examine the following four factors when enforcing a deadline for expert designations: (1) the explanation for the failure to identify the opinion; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Id.* at 791; *see also Betzel v. State Farm Lloyds*, 480 F.3d 704, 707-08 (5th Cir. 2007).

The undersigned recommends that the motion to strike be denied. The expert reports at issue do contain new opinions. Specifically, it appears that Khan and LeBatard have changed their conclusions about the rate of deflection for the house as built. Moreover, Khan's opinion is based on a new and previously undisclosed methodology–"Effective Column Length by National Design Specification" (NDS). However, these new opinions were prepared in response to late additions to Hammitt's expert report.

In response to a subpoena duces tecum and during his deposition of March 15, 2011, Hammitt provided new information in support of his opinion. He provided a typed report just prior to the deposition, ostensibly to correct a computational errors in his handwritten notes. Hammitt also adopted a different methodology for assessing the deflection rate when he changed

from a long form to a short or simplified form. It is undisputed that changing the methodology resulted in a change of certain input data. In fact, in their [223] rebuttal memorandum, the Ovellas concede that "the short form and the long form do not use the exact same inputs, there can be some variance in the conclusions." Rebuttal to Defendants Opposition to Plaintiffs' Motion to Strike at 11. At his deposition, Hammitt stated that the conclusion in his supplemental report are "within the realm of accuracy of the first report." Although Hammitt indicates that his ultimate conclusions have not changed with respect to rate of deflection, the question of the proper input data is disputed. Defendants point in particular to issues regarding wind load, modulus of elasticity, and piling height.

    Defendants argue that a subsequent inspection of the Ovella house revealed that Hammitt incorrectly measured the height of the pilings of the home and failed to account for the type of foundation when he arrived at his conclusion. By agreement of the parties, LeBatard inspected the Ovellas house on March 18, 2011, to confirm whether the cross bracings were installed as indicated on a diagram. In his affidavit, LeBatard stated that while taking measurements of the cross bracings, he noted that the column height was different from that used by Hammitt in his report. The Ovellas object to the fact that LeBatard took measurements during the site inspection rather than simply conducting a visual inspection. Nevertheless, the challenged expert reports were created in response to new information and inputs provided by Hammitt and by this subsequent inspection of the subject property. As such, the undersigned finds that Defendants have offered an adequate explanation for the late-served reports.

    The undersigned further finds that the Khan and LeBatard reports and corresponding testimony are of great importance. To a large extent, the issues in this case will turn on the

expert opinions and relative weight assessed to their testimony. It is of importance to Defendants' case that their final expert opinions, including assessments of all of the relevant input data, be placed before the jury.

In order to cure any potential prejudice from the late-served reports, the undersigned further recommends that discovery be re-opened for the limited purpose of allowing the Ovellas to depose Defendants' experts regarding their third expert reports. As part of the deposition, the Ovellas may question Defendants' experts regarding the basis of any changes from the previous reports. Thus, the undersigned recommends that the depositions be noticed and completed as soon as practicable.

### *Daubert*

In addition to timeliness, the Ovellas challenge the opinions of LeBatard and Khan pursuant to a *Daubert* motion. Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. A court is charged with a "gatekeeping function" to ensure the expert testimony is both reliable and relevant. *See Daubert*, 509 U.S. at 597. Reliability is analyzed under Rule 702, which requires that: (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Civ. P. 702. The expert witness must be qualified "by knowledge, skill, experience, training, or education. . . ." *Id.* A court must exclude an expert witness "if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). A court also looks to certain factors to evaluate the reliability of scientific expert testimony: methodology, testing, peer review

and publication, error rates, and "acceptability" in the relevant scientific community. *Daubert* 509 U.S. at 593-95.

**LeBatard**

The Ovellas seek to prevent LeBatard from testifying as an expert in structural engineering or providing legal opinions. The Ovellas argue that LeBatard, an architect, has opined about the sufficiency and accuracy of the structural engineering calculations performed by Khan and Hammitt. They contend that LeBatard is not qualified to give structural engineering opinion testimony because he is not a structural engineer. Further, LeBatard has included a discussion of Mississippi law regarding an architect's duties and whether the Ovellas' designer, Matthew Voelkel, held himself out to be an architect.

LeBatard has no formal training in structural engineering, or any kind of engineering, but asserts that he is qualified by virtue of thirty years of experience as an architect, during which time he was responsible for engineering of all of the projects he worked on. He indicates that by "responsible," he means that he either made structural calculations himself, or reviewed the work of a structural engineer.

The undersigned finds that LeBatard is not qualified to testify as an expert in structural engineering. His expertise and experience is as an architect. The fact that his work uses or incorporates the work of a structural engineer does not transform him into an expert in structural engineering. "The *Daubert* test must be applied with due regard for the specialization of modern science. A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002). LeBatard may give opinion testimony regarding architecture, even if it

touches on the subject of structural engineering. But the undersigned recommends that matters relating solely to the work and expertise of a structural engineer, such as an explanation of engineering calculations, should not be allowed. *See In re James Wilson Associates*, 965 F.2d 160, 172-73 (7th Cir. 1992) ("[t]he architect could use what the engineer told him to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him–of becoming in short the engineer's spokesman.").

In regard to LeBatard's legal opinions, the trial court will instruct the jury on Mississippi law, and the jury will determine the facts necessary to apply the law. *Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999). The undersigned recommends that LeBatard not be permitted to give legal opinion testimony.

### Khan

The Ovellas also challenge Khan's third report because it contains unreliable expert opinions. Specifically, they argue that (1) he relies on an inapplicable and unacceptable methodology to arrive at his conclusions about the deflection rate; and (2) he has provided inconsistent and unreliable opinions about the effect of cross bracings on the deflection rate.

The Ovellas argue that Khan's opinion should be found inadmissible because he did not use proper methodology in forming his opinions in the third report served April 1, 2011. In calculating the deflection rate, Khan used for the first time in his third report a formula found in the 1991 edition of "Effective Column Length by National Design Specification" (NDS) . The Ovellas assert that NDS is not mentioned or referenced in the International Building Code which governs in Harrison County. Thus, NDS does not apply to the Ovellas' home. Moreover, they

7

argue that NDS relates to buckling rather than deflection; therefore, it is inapplicable. Defendants counter that the International Residential Code, rather than the International Building Code, is the proper authority governing the Ovellas' home.  NDS is referenced in the International Residential Code; therefore, it is relevant and applicable for Khan's calculations.

The undersigned finds that the record is incomplete with respect to Khan's methodology and use of NDS.  The Ovellas have not had the opportunity to examine Khan regarding NDS and thereby to examine its applicability or reliability.  Thus, the Court does not have an adequate basis for ruling on Khan's expert report in connection with NDS.  As the undersigned has recommended allowing the Ovellas to depose Khan with respect to the opinions and conclusions contained in his third report, the undersigned recommends denying at this time the motion to strike Khan's opinion based on his use of NDS.  At the conclusion of expert discovery, the Ovellas may re-urge the motion with respect to Khan's use of NDS.

The Ovellas also argue that Khan's opinion should be disallowed because he issued inconsistent opinions regarding the cross bracings used in the Ovellas' house.  Moreover, Khan did not run calculations on the potential reduction in the deflection caused by the bracing.  There appear to be conflicting statements and opinions on the issue of cross bracings and whether they are beneficial or detrimental with respect to deflection.  In an email dated February 24, 2011, Khan stated that "[t]he bracing shown will hurt the structure rather than help.  It is unbalanced & unstable and the load path is not defined. They are not properly designed."  During his deposition, however, Khan testified that he had not run calculations on the potential reduction in deflection effected by the cross bracing.  Nevertheless, he testified that the bracing does "produce contribution".  In his third report, Khan concludes that the cross bracings "shall help during

hurricane wind speed." Notably, Plaintiff's expert, Hammitt, indicated in his deposition that cross bracings could help some with deflection, possibly as much as 10 or 15 percent. In an affidavit dated April 26, 2011, Khan explains that the cross bracings shown are not recommended by FEMA: "It may help reducing deflection (some) in one direction of wind and current flow but could be hazardous in the other direction due to obstruction mass associated with current flow." The undersigned concludes that the debate over the effect of cross bracings, both in theory and as it relates to the Ovellas' home, should be allowed to proceed to the jury. Therefore, the undersigned recommends denying the motion to strike Khan's opinion.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the [186] Motion to Strike Untimely Expert Reports and Testimony of Khan and LeBatard be DENIED. However, the undersigned recommends that discovery be re-opened for the limited purpose of allowing the Ovellas to re-depose Khan and LeBatard regarding the opinions contained in the reports served on April 1, 2011. The undersigned further recommends that the [194] Motion to Exclude be GRANTED to the extent that LeBatard's testimony should be limited to his opinions regarding architecture. The undersigned recommends that the [194] Motion to Exclude be DENIED with respect to Khan's testimony; however, subject to re-urging with respect to his use of NDS.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made;

the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      SO ORDERED, this the 5th day of August, 2011.

                                                      s/ *Robert H. Walker*
                                                      UNITED STATES MAGISTRATE JUDGE